<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCSHON D. G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | 21cv12889 (EP) <br><br> **OPINION** |

**PADIN, District Judge.**

Plaintiff Rocshon D. G. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner") determining that Plaintiff was no longer disabled under the Social Security Act ("Act") as of October 31, 2018. The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the parties' submissions without oral argument pursuant to Local Civil Rule 78.1, the Court will **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

On May 11, 2009, Administrative Law Judge ("ALJ") Leonard Olarsch found Plaintiff disabled as of January 28, 2008. D.E. 5, Administrative Record ("R.") 93, 97. ALJ Olarsch's disability finding was rooted in Plaintiff's inability to use his dominant right hand following wrist fusion surgery in April 2008. R. 95. ALJ Olarsch observed that Plaintiff then "ha[d] pain every day[, was] unable to make a fist. . . . [, and was] unable to do repetitive motions with his right hand." R. 95. On October 8, 2014 (the "comparison point decision" or "CPD"), the Social Security

Administration ("SSA")[1] determined that Plaintiff's disability continued. R. 98. At that time, it was observed that Plaintiff demonstrated "no medical improvement." R. 101. During a subsequent continuing disability review, the SSA determined that Plaintiff was no longer disabled as of October 31, 2018 because his medical impairments had significantly improved. R. 102, 110. This cessation of benefits decision was affirmed on reconsideration. R. 111.

Thereafter, upon Plaintiff's request, ALJ Scott Tirrell held a hearing on January 24, 2020, at which Plaintiff and a vocational expert testified. R. 36-66. On September 28, 2020, ALJ Tirrell issued a written decision finding that Plaintiff's disability ended on October 31, 2018. R. 21-31. Plaintiff sought review of this decision from the Appeals Council, which denied his request for review on April 21, 2021. R. 1-3. After Plaintiff's request was denied, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed the present appeal.

## II.     LEGAL STANDARDS

### A.     The Commissioner's Periodic Review of Entitlement to Disability Benefits

A claimant's entitlement to disability benefits must be reviewed periodically to determine, *inter alia*, whether "there has been any medical improvement" in the disabling impairments. 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594(a). "Medical improvement" is defined as "any decrease in the medical severity" of the claimant's impairments, and is based on "improvements in the symptoms, signs, and/or laboratory findings associated with" the claimant's impairments. 20 C.F.R. § 404.1594(b)(1). A finding of medical improvement will result in the termination of benefits if "it is also shown that [the claimant is] currently able to engage in substantial gainful

---

[1] "The term 'Commissioner' is synonymous with the Social Security Administration and thus may be fairly understood to encompass all levels of review within the operation of the agency." *See Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 297 (3d Cir. 2012).

activity." *Id.* at § 404.1594(b)(3). That determination may be based on all of the claimant's current impairments, not just those present at the time of the most recent favorable determination. *Id.* at § 404.1594(b)(5). Unless it is determined that the claimant remains disabled, the Commissioner "will use the new symptoms, signs and laboratory findings to make an objective assessment of [the claimant's] functional capacity to do basic work activities or residual functional capacity and [ ] will consider [the claimant's] vocational factors." *Id.* To determine whether medical improvement has occurred, the ALJ must "compare the current medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled to the medical severity of that impairment(s) at that time." *Id.* at § 404.1594(b)(7); *see also id.* at § 404.1594(c)(1) (explaining that medical improvement is determined "by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)").

The Commissioner's regulations provide an eight-step process for determining whether a claimant remains disabled for purposes of disability insurance benefits. 20 C.F.R. § 404.1594(f)(1)-(8). The process is as follows: (1) the claimant is no longer disabled if he is engaging in substantial gainful employment, (2) the claimant is still disabled if he suffers from a severe impairment or combination of impairments which meets or equals one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), (3) if the claimant does not meet any of the Listings, the ALJ must determine whether there has been medical improvement shown by a decrease in medical severity of the claimant's impairments, (4) if there is medical improvement, the ALJ then considers whether it is related to the claimant's ability to do work by determining whether there has been an increase in the claimant's residual functional capacity ("RFC") based

3

on the impairments that were present during the claimant's most recent favorable medical decision finding he was disabled, *i.e.*, the CPD (5) if there is no medical improvement, the ALJ considers whether any exceptions to medical improvement apply, (6) if claimant's medical improvement is related to his ability to do work, the ALJ then determines whether the claimant's RFC shows significant limitations on his ability to do work—if all of the claimant's impairments do not significantly limit his ability to do work, he is found to no longer be disabled, (7) if the claimant's RFC significantly limits his ability to do work, the ALJ will then consider whether he is able to do any work he has done in the past—if he can perform past relevant work, then he is found to be no longer disabled, and (8) if the claimant can no longer perform any past relevant work, the ALJ inquires whether someone of the claimant's RFC, age, education, and past work experience could find other work existing in the national economy—if the ALJ determines there is available work that the claimant could perform, then the claimant is found to no longer be disabled. *Id.*

"[O]rdinarily[,] a disability beneficiary meets his or her burden to prove continuing disability by introducing evidence that the underlying condition continues, which in turn gives rise to a presumption of continuing disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1238 (3d Cir. 1983). "Once the burden to come forward has shifted to the [Commissioner], the [Commissioner] must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity" or establish that the initial disability determination was erroneous. *Id.* at 1237. "Thus, once the claimant produces evidence of continuing disability, the burden of proof, or more properly the risk of non-persuasion, shifts to the [Commissioner] to produce evidence that the claimant is capable of undertaking gainful activity in order to rebut the presumption of continuing disability." *Keegan v. Heckler*, 744 F.2d 972, 975 (3d Cir. 1984). Finally, "'once having found a disability, the [Commissioner] may not terminate the benefits

4

without substantial evidence to justify so doing.'" *Kuzmin*, 714 F.2d at 1238 (quoting *Miranda v. Sec'y of Health, Educ. and Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). "This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed." *Id.*

### B.      The District Court's Standard of Review

On appeal, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, –– U.S. ––, 139 S.Ct. 1148, 1154 (2019) (cleaned up).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see also*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018)

("'[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983); *accord Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see also Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *accord K.K.*, 2018 WL 1509091, at *4. An ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *accord K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *accord Burnett*, 220 F.3d at 121 ("Although the ALJ may

weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705.  As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## III. THE ALJ's DECISION

Here, ALJ Tirrell followed the eight-step process detailed above and concluded that Plaintiff was no longer disabled as of October 31, 2018.  At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity through the date of ALJ Tirrell's decision, September 28, 2020.  R. 23.  Second, the ALJ concluded Plaintiff had the following medically determinable impairments as of October 31, 2018: status post right wrist fracture, with fusion surgery; carpal tunnel syndrome of the right wrist, status post surgery; and degenerative disc disease of the lumbar and cervical spine.  R. 23.  ALJ Tirrell determined that none of these impairments, or combinations of impairments, met any of the Listings.  R. 23-24.  Third, ALJ

7

Tirrell found that medical improvement occurred on October 31, 2018. R. 25. Fourth, the ALJ concluded that the medical improvement was related to Plaintiff's ability to do work because it resulted in an increase in his RFC. R. 25. Because ALJ Tirrell found that medical improvement had occurred, he did not consider any exceptions to medical improvement at step five. At step six, ALJ Tirrell found that Plaintiff has continued to have a severe impairment or combination of impairments. R. 25. The ALJ found however, that Plaintiff's RFC in light of these impairments allowed him to perform light work as of October 31, 2018, subject to certain limitations. R. 26. Notably, ALJ Tirrell expressly found that Plaintiff, as of October 31, 2018, "could frequently handle, finger, and feel with the dominant upper extremity." R. 26. Seventh, the ALJ determined that Plaintiff was unable to perform his past relevant work as a food delivery helper. R. 30. Finally, at step eight, ALJ Tirrell considered Plaintiff's age, education, work experience, and RFC and concluded there were a significant number of jobs in the national economy that Plaintiff could perform. R. 30-31. As such, the ALJ found that Plaintiff's disability had ended on October 31, 2018. Plaintiff now appeals the ALJ's determination.

## IV.   DISCUSSION

Plaintiff raises two arguments on appeal. First, he avers that ALJ Tirrell's finding that Plaintiff's wrist condition medically improved between October 8, 2014, *i.e.*, the SSA's most recent comparison point decision, and October 31, 2018, such that Plaintiff could "frequently handle, finger and feel with the dominant upper extremity" is not based on substantial evidence. D.E. 10 at 6-10. Second, he claims that reversal is warranted because "Plaintiff's RFC demonstratively deteriorated rather than medically improved since the 2009 and 2014 disability determinations." *Id.* at 12. In that respect, Plaintiff specifically avers that the ALJ's RFC finding, in addition to being improperly based on the ALJ's determination that Plaintiff's right wrist

8

condition medically improved, failed to account for Plaintiff's degenerative disc diseases in the lumber and cervical spine. *Id.* at 17. Neither of these two interrelated arguments provides a basis to reverse the ALJ's decision.

First, substantial evidence in the record supports ALJ Tirrell's finding that Plaintiff experienced significant medical improvement in his right wrist between October 8, 2014 and October 31, 2018. As noted above, on May 11, 2009, ALJ Olarsch found Plaintiff disabled as of January 28, 2008. R. 93, 97. This initial disability determination was rooted in Plaintiff's inability to use his dominant right hand following wrist fusion surgery in April 2008. R. 95. On October 8, 2014, *i.e.*, the date of the SSA's most recent favorable disability determination, the SSA found that Plaintiff demonstrated "no medical improvement." R. 101. As ALJ Tirrell alluded to in his 2020 decision discontinuing Plaintiff's disability benefits, during Plaintiff's October 8, 2014 orthopedic examination, it was observed that Plaintiff was not able to move his right wrist, extend or flex his fingers, or make a fist, and that he reported decreased hand sensation. R. 25, 285.

The medical records from 2018 suggest that Plaintiff's ability to effectively use his right hand markedly improved from the 2014 CPD. Indeed, during an August 20, 2018 consultative examination with Plaintiff, Dr. Rashel Potashnik noted that Plaintiff was able to extend his right hand fully, make a fist, oppose his fingers, that Plaintiff had a 5/5 grip and pinch strength, and that Plaintiff was able to separate papers and button buttons. R. 297. Likewise, Dr. Arthur Pirone, who examined Plaintiff on August 22, 2018, concluded that Plaintiff "appear[ed] capable of using his right hand effectively." R. 105. Finally, Dr. Nancy Simpkins, during an October 22, 2018 physical RFC assessment of Plaintiff, noted "good healing" with respect to Plaintiff's "right wrist fracture." R. 337. ALJ Tirrell expressly accounted for all of these medical observations in his decision discontinuing benefits. R. 28-29. Plaintiff, moreover, points to no contemporaneous

9

medical evidence that contradicts the ALJ's determination that his impaired right wrist improved between 2014 and 2018. *See Hagans v. Commissioner of Social Security*, 694 F.3d 287, 307 (2012) (because this is a "termination proceeding, there is a burden-shifting scheme in which a recipient must first 'introduce [ ] evidence that his or her condition remains essentially the same as it was at the time of the earlier determination.'") (quoting *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)).

Substantial evidence also supports the ALJ's conclusion that Plaintiff could, as of October 31, 2018, "frequently handle, finger and feel with the dominant upper extremity." In that respect, Dr. Simpkins, based on her October 22, 2018 physical assessment, concluded that Plaintiff had no manipulative limitations. R. 339. Dr. Potashnik's August 20, 2018 evaluation of Plaintiff's right wrist is consistent with the conclusion of Dr. Simpkins. R. 297. And Dr. Pirone, while concluding that Plaintiff did have manipulative limitations with respect to use of his right hand, also noted that Plaintiff "appear[ed] capable of using his right hand effectively." R. 105. Plaintiff, moreover, points to no contemporaneous evidence in the record which undermines the ALJ's conclusions regarding Plaintiff's ability to use his right upper extremity as of October 31, 2018. *See Bonilla v. Comm'r of Soc. Sec.*, Civil No. 19-0291, 2021 WL 792126, at *3 (D.N.J. Mar. 1, 2021) (affirming ALJ's denial of disability benefits where substantial evidence supported finding of medical improvement in claimant's ability to use his right hand, and further noting that claimant failed to present any evidence which "show[ed] he cannot frequently handle.").

Plaintiff relatedly argues that the ALJ's RFC determination is also erroneous because it failed to properly account for Plaintiff's degenerative disc diseases in the lumber and cervical spine. This assertion, however, is contradicted by the record. Indeed, ALJ Tirrell noted that Plaintiff suffered from, among other severe impairments, "degenerative disc disease of the lumbar

and cervical spine." R. 25.  And he expressly accounted for the results of the August 13, 2018 MRIs of Plaintiff's cervical and lumbar spine in rendering his RFC determination.  *See* R. 28 (The "MRI [of Plaintiff's cervical spine] indicates disc herniation with annular tear mildly indenting the ventral aspect of the cord at C3-4, with normal cord signal, as well as disc herniation at C5-6 and C6-7, and bulging at C4-5, with mild straightening (B9F/18-19).  An MRI of the lumbar spine . . . indicates dextroscoliosis with multiple disc bulges and herniation with annular tear at L5-S1") (citing R. 301-03).  The ALJ also noted, however, that Dr. Potashnik, during a subsequent evaluation of Plaintiff on August 20, 2018, observed that Plaintiff had a normal gait, could walk on his heels and tiptoes, could squat, and had a normal range of motion in his cervical and lumbar spine.  R. 296.  The ALJ, furthermore, expressly incorporated postural and hazard avoidance limitations into his RFC based on the above-MRI results and "the observations made during the consultive examinations."  R. 26, 29.  In short, the record demonstrates that ALJ Tirrell's RFC determination accounted for Plaintiff's spine impairments.  And "[a]s long as the RFC includes all credibly established limitations, there is no error."  *Garcia-Rivera v. Comm'r of Soc. Sec.*, No. CV 19-10035 (SRC), 2020 WL 3073824, at *2 (D.N.J. June 10, 2020).

## V.     CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's determination is supported by substantial evidence and **AFFIRMS** the decision of the Commissioner.  An appropriate Order follows.

Dated: February 3, 2023

Evelyn Padin, U.S.D.J.